224 So.2d 571 (1969)
W.R. FAIRCHILD CONSTRUCTION CO., Ltd., J.W. Snowden Construction Company, Employer, and Western Fire Insurance Company, Carrier
v.
Mrs. Edna OWENS, mother, and Elisha Pearline Owens Bryant, daughter, Dependents of John Clifton Owens, Deceased.
No. 45361.
Supreme Court of Mississippi.
June 9, 1969.
Rehearing Denied July 3, 1969.
*572 Dorrance Aultman, Hattiesburg, for appellants.
Jack H. Pittman, Homer W. Pittman, Hattiesburg, for appellees.
INZER, Justice:
This is an appeal by employer-carrier from a judgment of the Circuit Court of Hancock County affirming an order of the Workmen's Compensation Commission directing appellants to pay death benefits to appellees as dependents of John Clifton Owens, deceased.
John Clifton Owens died on November 21, 1967, as a result of an accidental injury which arose out of and in the course of his employment for W.R. Fairchild Construction Co., Ltd. and J.W. Snowden Construction Company. Claims for death benefits were filed by his mother, father and two sisters. A separate claim was filed on behalf of Elisha Pearline Owens Bryant, as a dependent child.
The full commission affirmed an order of the attorney referee ordering the payment of benefits to Mrs. Edna Owens, mother of the deceased, as a partial dependent and a majority of the commission affirmed the order of the attorney referee ordering payments of death benefits to Elisha Bryant as a dependent child. Upon appeal to the circuit court, that court entered a judgment affirming the order of the commission. Hence this appeal.
It is first contended that the circuit court was in error in affirming the order of the commission as to Elisha Bryant as a dependent child. It is urged that Elisha Bryant was not a dependent child of the deceased due to her adoption by Armon B. Bryant prior to the injury and death of her natural father. The proof shows that Elisha was born on February 9, 1962, to the marriage of John Owens and Betty Jean Owens. John and Betty Jean were divorced by a decree of the chancery court of Forrest County and by the terms of the decree the mother was awarded the custody of the child and the father was ordered to pay $25 per month for the support of the child. Betty Jean then married Armon B. Bryant and in February 1964 they filed a petition in the chancery court of Forrest County seeking the adoption of Elisha Pearline Owens. John C. Owens, the natural father, joined in this petition individually and as next friend of his child consenting to the adoption. Pursuant to the petition a final decree of adoption was rendered whereby Elisha Pearline Owens was adopted by Armon B. Bryant. No question is raised as to the legality of the adoption and it appears to be in conformity with the statute. By the terms of this decree the name of the child was changed from Elisha Pearline Owens to Elisha Pearline Bryant and a birth certificate was issued showing that Elisha Pearline Bryant was the daughter of Armon B. *573 Bryant and Betty Jean Bryant. The decree bestowed upon Elisha all rights of inheritance according to Section 1269-06, Mississippi Code 1942 Annotated (Supp. 1968). The decree vested the adopting parents with all rights, powers and duties and obligations to the child as if born to their marriage. The decree also terminated all parental rights of John Clifton Owens and also terminated any right he had to inherit from the child.
From the date of the adoption the child resided with her mother and adoptive father at her grandmother's home. There was conflicting evidence from which the commission could find that the natural father continued to pay $25 per month for the support of the child.
Appellant contends that when Elisha was adopted the conclusive presumption that she was a dependent of her natural father was terminated and from that time forward she was conclusively presumed to be a dependent of her adoptive father. This contention raises a question of first impression in this Court. An examination of the decisions of courts of other jurisdictions reveal that some of the courts hold that the adoption terminates the conclusive presumption of dependency as to the natural parents, while others hold that the conclusive presumption continues in spite of the adoption. A study of these decisions reveals that each of the courts reached a conclusion based upon its interpretation of the statutes of the particular state, and for that reason these decisions are not too helpful to us in reaching a decision in this case. We must construe our statutes to determine the course that we will follow.
Section 6998-13, Mississippi Code 1942 Annotated (Supp. 1968) provides for death benefits. Section 6998-13(g) is as follows:
All questions of dependency shall be determined as of the time of the injury. A surviving wife, child, or children shall be presumed to be wholly dependent. All other dependents shall be considered on the basis of total or partial dependence as the facts may warrant.
Section 6998-02(12) states as follows:
"Child" shall include a posthumous child, a child legally adopted prior to the injury of the employee, a child in relation to whom the deceased employee stood in the place of a parent for at least one (1) year prior to the time of injury, and a stepchild or acknowledged illegitimate child dependent upon the deceased, but does not include married children unless wholly dependent on him. "Grandchild" means a child as above defined of a child as above defined. "Brother" and "sister" include stepbrothers and stepsisters, half brothers and half sisters and brothers and sisters by adoption, but does not include married brothers nor married sisters unless wholly dependent on the employee. "Child", "grandchild", "brother", and "sister" include only persons who are under eighteen (18) years of age, and also persons who, though eighteen (18) years of age or over, are wholly dependent upon the deceased employee and incapable of self-support by reason of mental or physical disability. (Emphasis added).
Paragraph (18) of this Section provides as follows:
It is expressly provided, agreed, and understood in determining beneficiaries under this section that a widow, widower suffering a mental or physical handicap, and children under the age of eighteen (18) years are presumed to be dependent.
After the enactment of the Workmen's Compensation Act in 1948 the legislature completely revamped the adoption laws of this state by the enactment of Chapter 34 of the Laws of Extraordinary Session of 1955 which appears as Sections 1269-02 through 1269-12 of our present Code.
Section 1269-06 provides what the final decree shall contain and its effect and the pertinent part of this statute states:
The final decree shall adjudicate, in addition to such other provisions as may be found by the court to be proper for *574 the protection of the interests of the child, and its effect, unless otherwise specifically provided, shall be that (a) the child shall inherit from and through the adopting parents and shall likewise inherit from the other children of the adopting parents to the same extent and under the same conditions as provided for the inheritance between brothers and sisters of the full blood by the laws of descent and distribution of the State of Mississippi, and that the adopting parents and their other children shall inherit from the child, just as if such child had been born to the adopting parents in lawful wedlock; (b) the child and the adopting parents and adoptive kindred are vested with all of the rights, powers, duties and obligations, respectively, as if such child had been born to the adopting parents in lawful wedlock, including all rights existing by virtue of section 1453 of the Code of 1942; provided, however, that inheritance by or from the adopted child shall be governed by subsection (a) above; (c) that the name of the child shall be changed if desired; and (d) that the natural parents and natural kindred of the child shall not inherit by or through the child except as to a natural parent who is the spouse of the adopting parent, and all parental rights of the natural parent, or parents, shall be terminated, except as to a natural parent who is the spouse of the adopting parent. Nothing in this act shall restrict the right of any person to dispose of property under a last will and testament.
A certified copy of the final decree shall be furnished to the bureau of vital statistics, together with a certificate signed by the clerk giving the true or original name and the place and date of birth of the child; the said bureau shall prepare a revised birth certificate which shall contain the original date of birth, with the place of birth being shown as the residence of the adoptive parents at the time the child was born, but with the names of the adopting parents and the new name of the child. The fact that a revised birth certificate is issued shall be indicated only by code numbers or some letter inconspicuously placed on the face of the certificate. The word "revised" shall not appear thereon. The original birth certificate shall be removed and placed, with the certified copy of the decree of adoption and the certificate, in a safety locked drawer or vault and the same shall not be public records and shall not be divulged except upon the order of the court rendering the said final decree, and for all purposes the revised certificate shall be and become the birth certificate of the child. Provided, that the bureau of vital statistics of the State of Mississippi shall be required to prepare and register revised certificates only for births which occurred in the State of Mississippi as shown either by the court decree or by the original birth record on file in the bureau; but if the birth occurred in some other state, then the director of the bureau of vital statistics of the State of Mississippi shall be required to furnish to the attorney or other person representing the adopted child, the name and address of the proper official in the state where the child was born, to whom the adoption decree and other information may be referred for appropriate action and shall furnish to such attorney the certified copy of the decree and the certificate furnished by the clerk. (Emphasis added.)
We think that it is clear that it was the intention of the legislature in the passage of this adoption act to sever all rights, duties and obligations of the natural parent toward the child adopted, and to bestow those rights, duties and obligations upon the adopting parent just the same as if the child had been born in wedlock to the adoptive parents. The child becomes a member of the adopting family and is given the right to inherit by and through its adopting parents. When Elisha was adopted by Armon B. Bryant she became his child just the same as if she had been born unto him. John Clifton Owens, the father, no longer owed her any legal duty or had any legal *575 right as a parent. The only relationship remaining was the right of the child to inherit from her natural father. Section 1269-12 repealed the former adoption laws and provided "and all other laws, to the extent that such other laws are in conflict with the provisions of this act, are hereby repealed." We hold that by the passage of this act the legislature expressed a clear intent that all rights, duties and obligations of the natural parent be terminated and this should include the presumption of dependency under the Workmen's Compensation Act. The fact that the child could inherit from her father is not controlling because Workmen's Compensation benefits are not obtained through inheritance but are conferred by statute. In this case the conclusive presumption that Elisha was a dependant of John Clifton Owens was terminated as of the date of the adoption and from that date she was and is conclusively presumed to be a dependant of her adopted father for workmen's compensation purposes.
It is also urged that although the conclusive presumption of dependency was terminated that the award of the commission should be affirmed in this case for the reason that the proof shows that the natural father continued to support the child. It is argued that the commission had a right to hold that John Clifton Owens stood in the place of a parent for at least one year prior to the time of the injury. The term "stood in the place of a parent" is synonymous to the term "a person in loco parentis". Any person who takes a child of another into his home and treats it as a member of his family, providing parental supervision, support and education, as if it were his own child is said to stand "in loco parentis." Farve v. Medders, 241 Miss. 75, 128 So.2d 877 (1961). From the time of the adoption the child in this case never resided with John Owens. She remained in the care, custody and control and under the supervision of the mother and adoptive father. Under these circumstances it cannot be said that John Owens stood in the place of the parent to her, even though he provided some support for her. We hold that the circuit court was in error in affirming that part of the order of the commission which awarded death benefits to appellee Elisha Pearline Bryant as a dependent child of John Clifton Owens.
It is also contended that the circuit court was in error in affirming the award to Mrs. Edna Owens, mother of the deceased employee, as a partial dependent. Appellants admit that there was evidence that John Owens contributed to the support of his mother but contend that the proof does not show that she relied on that support and she anticipated that it would continue in the future. A review of the evidence in this case reveals that there was ample evidence to support the finding of the commission that John Owens contributed to his mother's support which she needed and relied on and that she had reasonable grounds to anticipate further support. Mid-State Paving Co. v. Farthing, 233 Miss. 333, 101 So.2d 850 (1958).
For the reasons stated the judgment of the circuit court will be affirmed as to the award to Mrs. Edna Owens, mother, as a partial dependent of the deceased employee. That part of the judgment of the circuit court which affirmed the award of death benefits to Elisha Pearline Bryant as a dependent child will be reversed and judgment will be entered here denying her claim.
Affirmed in part, reversed in part and judgment rendered here.
All Justices concur, except RODGERS, JONES and PATTERSON, who dissent.
RODGERS, Justice (dissenting):
I respectfully disagree with the conclusion reached by the majority of this Court in this case for four reasons: (1) the Workmen's Compensation statutes are clear and include natural "children" as dependents. There is nothing in these statutes which excludes "natural children" as dependents because of the fact that they have been adopted by some other person; (2) *576 the best reasoned authority from other states includes natural children as dependents regardless of the fact that they have been adopted by foster parents; (3) the adoption statutes of this state do not prevent a natural child from recovering Workmen's Compensation benefits simply because the child's foster parents have agreed to support the child; and (4) in the instant case the natural parent was supporting his child at the time of his death although the child was not living with the deceased employee.
The simple question presented for determination is whether a child, legally adopted by another, is entitled to benefits under the Workmen's Compensation Law, upon the death of the natural father.
The pertinent provisions in the Mississippi Workmen's Compensation Law necessary for the determination of this issue are as follows:
Under Mississippi Code 1942 Annotated section 6998-02(12) (Supp. 1968) various definitions are ascribed to the word "child." That Code section states:
"(12) `Child' shall include a posthumous child, a child legally adopted prior to the injury of the employee, a child in relation to whom the deceased employee stood in the place of a parent for at least one (1) year prior to the time of injury, and a stepchild or acknowledged illegitimate child dependent upon the deceased, but does not include married children unless wholly dependent on him. * * * `Child' * * * include[s] only persons who are under eighteen (18) years of age, and also persons who, though eighteen (18) years of age or over, are wholly dependent upon the deceased employee and incapable of self-support by reason of mental or physical disability."
The statute creates a presumption of dependency for children in two places: One is section 6998-02(18) and the other is section 6998-13(g). Those sections of the Workmen's Compensation Act read as follows:
§ 6998-02(18)
"(18) It is expressly provided, agreed, and understood in determining beneficiaries under this section that a widow, widower suffering a mental or physical handicap, and children under the age of eighteen (18) years are presumed to be dependent."
§ 6998-13(g)
"(g) All questions of dependency shall be determined as of the time of the injury. A surviving wife, child, or children shall be presumed to be wholly dependent. * * *"
In section 6998-02(12) as set out above the Legislature explained the meaning of the word "child" as used in Workmen's Compensation Law. However, I respectfully submit that this section of the act was not all inclusive in its definition of the word "child"; rather, it simply extended the meaning of the term to include certain parent-child relationships which might otherwise be interpreted to be non-inclusive of the meaning of "child" for purposes of the act. This conclusion seems obvious, since a close reading of section 6998-02(12) reveals that the Legislature failed to include even the most common situation which would arise, that being the situation where a child was living with its natural parents and was wholly dependent upon them at the time of the injury. In other words, the Legislature included under the definition of "child" only those situations wherein unusual circumstances deemed a particular definition to be given to the meaning of the word.
In 1962 the State of New York, faced with identical facts to the facts in the case at bar, interpreted the section of its Code which explained the word "child" to "include a posthumous child, a child legally adopted prior to the injury of the employee, and a stepchild or acknowledged illegitimate child dependent upon the deceased." Shulman v. New York Board of Fire Underwriters, 15 A.D.2d 700, 223 N.Y.S.2d 312 (1962). In holding that the child, even though legally adopted by an *577 other, was entitled to Workmen's Compensation benefits, upon the death of her natural father, the New York court discussed its statute which is plainly similar to the Mississippi statute:
"In the process of explaining the meaning of the word `child' as used in the Workmen's Compensation Law, the Legislature did not exclude the offspring of natural parents. It simply extended the meaning of the term to include certain parent-child relationships  natural and artificial  which, unless clarified, might be deemed not to be within the literal sense of the word. Had the purpose been to destroy the consanguineous connection between a father and his natural child adopted by another as the basis for an award of death benefits, the statutory definition certainly would have been so precisely written as to leave no doubt that such was its intent."
The New York court, in the Shulman case, supra, seemingly took the most direct route in awarding compensation benefits to the child in that case. It found no necessity to rely on a presumption of dependency for children; indeed, the opinion failed to state whether New York had such a provision in its Workmen's Compensation Act. The New York court simply said, in effect, that all offspring of natural parents are entitled to Workmen's Compensation benefits upon death of the natural father, since the Legislature failed to exclude from benefits a child who had been legally adopted by another at the time of the injury to the natural parent. The New York court in Shulman also relied on its Legislature's preserving the right of an adopted child to inherit from its natural parents. Mississippi law also apparently preserves the right of a child to inherit from its natural parents, although legally adopted by another. It is stated in Bunkley, Divorce and Separation in Mississippi § 12.16, Note 21 (1957), at 254 that: "There is nothing in the statute which takes away the right of the adopted child to inherit from or through its natural parents."
The Texas Supreme Court, in Patton v. Shamburger, 431 S.W.2d 506 (Tex. 1968), had a similar factual situation before it and decided contrary to the New York decision of Shulman. In a 5-4 decision the majority conceded that under Texas law children adopted by another nevertheless inherit from their natural parents. However, the majority relied heavily upon the Texas adoption statute which provided in part that when a child is adopted all legal relationships and rights and duties between the child and its natural parents cease, and the child is deemed to be for every purpose the child of its parents by adoption as fully as though naturally born to them in lawful wedlock. The minority opinion criticized the majority as harsh and unrealistic, and stated that the Legislature intended that for a child to recover the only requirement was that the child be a minor of the workman. The minority opinion recognized that there is a conflict of authority on the issue in question in the various jurisdictions in this country, and of course relied on those cases which awarded benefits.
In Holland Construction Company v. Sullivan, 220 Ark. 895, 251 S.W.2d 120 (1952), the child in question in that case was adopted with the natural father's consent, the natural mother being dead. The natural father continued to visit the child and to give him presents and money. He apparently gave his child up to adoption in order that the child might be properly reared. The Arkansas Supreme Court held that the child was entitled to collect benefits due to the death of the natural father. In reaching its decision the Arkansas court dealt with provisions of its Workmen's Compensation Act, which are very similar to the pertinent provisions of the Mississippi Act. Apparently the paramount reason for the court's holding in favor of recovery by the child is found in the following statement:
"Thus there is entirely absent from the 1939 Workmen's Compensation Law, any statement either (a) that the act of adoption *578 takes a child out of the terminology of `child' of the natural father, or (b) that actual dependency must be proved as regards a natural child under 18 years of age."
In Snook v. Herrmann, 161 N.W.2d 185 (Iowa 1968), the Supreme Court of Iowa awarded compensation to an adopted child upon the death of her natural father. Section 85.42 of the Iowa Code conclusively presumed to be a dependent "[a] child or children under sixteen years of age, and over said age if physically or mentally incapacitated from earning, whether actually dependent for support or not upon the parent at the time of his or her death." The Iowa court reaffirmed that this statute created a conclusive presumption of dependency upon a natural parent whether or not the child was actually dependent for support at the time of the parent's injury. This case is enlightening in that it is a 1968 case and it therefore rather comprehensively analyzes all the recent cases on the issue in the case at bar.
It was pointed out by the author in 2 Larson, Workmen's Compensation Law § 62:30 (1968):
"In many statutes, the right of the widow and often of the young children to recover death benefits is made absolute, if they were living with the deceased. In some, even the requirement of living with the deceased is absent. The absolute right may be in the form of a conclusive presumption of dependency, or of a simple statement that the widow and children shall be paid the benefits.
* * *
"When the conferral of benefits is of the absolute type, references elsewhere in the statute to `dependent widows' or `dependent children' are not to be taken as altering the basic rights to benefits irrespective of dependency; this kind of reference can be explained on the ground that, once the conclusive presumption of dependency has been established in the statute, it is appropriate thereafter to use the adjective `dependent' of both presumed and actual dependents.
"When the conclusive presumption of dependency of a child is not made conditional on living with the father, the presumption continues to operate even when the child is living with its stepfather. The fact that the child would also qualify as dependent on the stepfather, and that the result would be double dependency, is immaterial.
"In some jurisdictions, the statutory status of conclusively presumed dependency of a natural child continues even after the child has been adopted. Georgia has reached a contrary result."
The author cites as authority Holland Construction Company v. Sullivan, 220 Ark. 895, 251 S.W.2d 120 (1952); In re Jones, 84 Idaho 327, 372 P.2d 406 (1962); Stark v. Watson, 359 P.2d 191 (Okl. 1961). There are other cases from other states cited which are to the contrary.
In Mississippi natural children are conclusively presumed to be "wholly dependent." Miss.Code 1942 Ann. § 6998-13(g) (Supp. 1968). Moreover, in the case of Anderson-Tully Company v. Wilson, 221 Miss. 656, 74 So.2d 735 (1954) we held that: "* * * `children under the age of eighteen years are presumed to be dependent.' This creates a rule of substantive law under the statute, to the effect that a child under eighteen years is conclusively presumed to be dependent." 221 Miss. at 665, 74 So.2d at 738.
My colleagues seem to feel that the mere fact that a child has been adopted by another takes from the child the right to have the support it is receiving from its natural parent. The adoption statute (Miss. Code 1942 Ann. § 1269-06 (Supp. 1968)) does not say the child cannot receive support from its parent. What it says is that "all parental rights of the natural parent, or parents, shall be terminated." However, the right of a child to inherit from its natural parents is not taken from the child *579 nor is its right to receive support from its natural parents.
In the case of Sledge v. Floyd, 139 Miss. 398, 104 So. 163 (1925), we said:
"We do not think the statute intended to deprive children of their rights to inherit from their natural parents and blood relatives. To do so would raise grave questions when a child having expectations should be adopted against its consent or without its power to consent during the tender years of minority and thus be deprived of benefits.
"There is ample authority for the position that a child may inherit from both natural and adopted parents, and we prefer to align ourselves with that line of authorities which so hold."
The adoption section of our Code (§ 1269-06) was amended in 1958, after Sledge v. Floyd, but the right of inheritance was not changed by the amendment.
Inasmuch as the Workmen's Compensation Law (Code § 6998-02(18)) gives a child the right to receive Workmen's Compensation from its natural parent and it is conclusively presumed (Code § 6998-13(g)) to be a dependent, I am convinced that a natural child should be permitted to recover Workmen's Compensation benefits. Moreover, the best reasoned opinions are in favor of the child's right to recover, and this is especially true where the Workmen's Compensation laws in review do not contain the modifying adjective "dependent" before the word "children."
Finally, in the case now before the Court, the child was receiving support from its natural parent, and to take from this child the support the statute clearly gives it simply because other persons have injected themselves into its life by adopting it without its consent, unduly extends the adoption statutes into the Workmen's Compensation Law of this state.
JONES and PATTERSON, JJ., join in this dissent.